## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL No. ELH-15-0554 |
| CURTIS BROGDEN | : | |

**ooooOoooo**

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

The United States of America, by its undersigned counsel, submits this memorandum of law in opposition to the following motions filed by the Defendant, Curtis Brogden, the motion to suppress tangible and derivative evidence related to a warrant to search 2512 East Federal Street, Baltimore, Maryland and motion for a *Franks* hearing (document 17). For the reasons stated herein, the motions should be denied.

## FACTUAL BACKGROUND

In the early evening on April 18, 2015, Baltimore Police were called to the 600 block of North Glover St in Baltimore City. When they arrived, they found Mr. Curtis Brogden who had been shot in his left thigh. As they investigated the shooting, they determined there were spent casings from two different firearms, that Mr. Brogden's hands tested positive for gunshot residue, there was a witness who indicated that Brogden had been an active participant in a "shoot-out," and that Mr. Brogden's leg had been broken as a result of the "shoot-out." As a result of the investigation, Baltimore Police presented this information to a Maryland Court Commissioner. The Commissioner issued an arrest warrant for the charge of Attempted First Degree Murder for Mr. Brogden on June 18, 2015.

1

Baltimore Police Detective Williams is assigned to the Warrant Apprehension Task Force (WATF).  When he receives an assignment he is informed of the arrestee's pending charges, arrests, convictions, and addresses.  Detective Williams had gone in the days before June 22nd to 4613 Marielle Drive, Rosedale, Maryland 21237 and saw no trace of Mr. Brogden.  His search for Mr. Brogden brought him to 2512 East Federal Street,  an address Mr. Brogden had referenced at various times.  Specifically, Mr. Brogden had identified his paramour Lashealll Harry and her residence (the East Federal address) as an emergency contact.  Additionally, the East Federal residence is only ten blocks[1] south of the 600 Block of N. Glover Street where Mr. Brogden had engaged in a "shoot-out."

On June 22, 2015 Detective Williams was wearing plain clothes with a tactical vest emblazoned with "POLICE." At approximately 1:20 PM, Mr. Brogden exited the residence and entered a cab.  After calling for and the arrival of Baltimore Police uniformed patrol as "back up" the cab was stopped and Mr. Brogden was arrested pursuant to the previously issued arrest warrant.

Due to the proximity to 2512 East Federal Street and the attention resulting from the arrest of Mr. Brogden, Detective Williams and three uniformed patrol officers went to 2512 to secure the location pending the application for a search warrant. Upon arrival, Detective Williams announced his and two of the uniformed Officers' presence by knocking on the front door.  An adult answered the door and as a result of that interaction the officers believed they had been invited inside 2512 East Federal Street.

The three officers located five individuals inside the residence and asked them to assemble in the living room so they could assess the situation and then seek instruction from

---

[1] Eight tenths of a mile on foot.

the investigating officer, Detective Crane.  For the officers' safety, the officers checked the living room couches for weapons and immediately discovered a loaded firearm.  The occupants were then transported to the Baltimore Police Department Southeastern Police District Station.   Once there, they were individually advised of the rights per *Miranda* and interviewed.  It was determined as a result of these interviews that Mr. Brogden had lived at 2512 East Federal from two months to one year.

The majority of these facts were laid out in a search and seizure warrant and presented to the Honorable James H. Green of the District Court of Maryland, who reviewed it, determined there was probable cause, and approved the search of and resulting seizures from Mr. Brogden's residence, 2512 East Federal Street.

Detectives then returned to the house and searched the residence.  Located in Mr. Brogden's bedroom were personal papers in Mr. Brogden's name, medical supplies related to the care and treatment of his wounds from the shooting, and appropriately sized men's clothing. The Detectives located an empty box of .357 caliber ammunition in a drawer of Mr. Brogden's dresser.  The box was under paperwork and other items connected to his medical status.  Next to Mr. Brogden's side of the bed, and within reach lunge and grasp of that bedside, was a blue storage tote.  Inside that storage tote and underneath some clothing, Detectives found a .357 caliber Smith and Wesson handgun loaded with six rounds of ammunition, the same caliber as the ammunition box.  The firearm serial number was partially obliterated but later restored revealing a serial number of 32465.

**ARGUMENT**

**I.     THE OFFICERS LEGALLY ENTERED THE RESIDENCE PRIOR TO THE ISSUANCE OF A SEARCH WARRANT**

The defense has moved to suppress the evidence recovered from 2512 East Federal Street arguing that the officers' warrantless entry was illegal.  Detective Williams and the supporting patrol officers announced their presence and entered the residence after having been invited inside by an adult male.  Therefore the officers' entry was consented to and therefore did not require probable cause or a warrant for their initial entry.

The Fourth Amendment recognizes a valid warrantless entry when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006) (citing *Illinois v. Rodriguez*, 497 U.S. 177 (1990); *United States v. Matlock*, 415 U.S. 164 (1974)).  The officers' entry was made subsequent to consent of an occupant who shared, or was reasonably believed to have shared, authority over the common area of the residence.

 Consent is valid when (1) made by a person with authority to consent, *Stoner v. California,* 376 U.S. 483 (1964), and (2) is "knowing and voluntary." *Trulock v. Freeh*, 275 F.3d 391 (4th Cir.2001). A person may have either actual authority as the householder, *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973), or common authority as a fellow occupant when the suspect is absent, *United States v. Matlock*, 94 S.Ct. 988 (1974). Further, the exception applies to apparent authority when a co-occupant whom the police reasonably, but erroneously, believe to possess shared authority as an occupant provides consent. *Illinois v. Rodriguez*, 497 U.S. 177 (1990). All the adults inside the residence were either overnight guests or fulltime residents and therefore possessed actual authority to give consent.  Even

4

presuming *arguendo* that the individual who opened the door did not possess actual authority, that individual possessed apparent authority. The officers' reliance on the apparent authority was objectively reasonable.

Turning to the second factor, there must be consent given that is knowing and voluntary. The court must first look to whether the consenting party's words or conduct could be reasonably interpreted as providing consent, then turn to whether that consent was voluntary. *United States v. Harvey,* 901 F. Supp. 2d 681, 692 (N.D.W. Va. 2012). When the government seeks to justify a warrantless search based on consent, it bears the burden of proving, by a preponderance of the evidence, that it obtained knowing and voluntary consent. *United States v. Harvey*, 901 F. Supp. 2d 681, 692-93 (N.D.W. Va. 2012) (citing *United States v. Toyer*, 414 Fed.Appx. 584, 588 (4th Cir.2011)). The standard for reviewing is one of "'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991) (citations omitted).  Where consent is implied, rather than explicitly given, the government's burden "'is heavier ... since consent is not lightly to be inferred.'" *United States v. Neely*, 564 F.3d 346, 350 (4th Cir.1996). The occupant that allowed officers to enter the 2512 East Federal Street residence provided consent that was implied, if not explicit, to enter the house. By stating, "The man you are looking for is over there," and stepping aside, the occupant was providing the officers, whom were easily recognized as such, the authority to enter the home.

Next, in considering whether the consent given was voluntary, the court must look at the totality of the circumstances surrounding the consent. *Scneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The factors the courts have pointed to include characteristics of the person

consenting, (such as age, maturity, education, intelligence, and experience) as well as the conditions at the time of consent (such as officer's conduct; number of officers present, and the duration, location, and time of the encounter). *United States v. Lattimore*, 87 F.3d 647, 650 (4th Cir. 1996). The man appeared to be the age of majority, there were only three officers present, the officers did not act aggressively, nor did they have their weapons drawn, and it was a relatively short encounter before being provided consent. Therefore, the consent was voluntarily and freely given.

In this case, Detective Williams and the officers calmly knocked and announced their presence, objectively believed they had been invited in, and then legally entered 2512 East Federal.

## II.     THE OFFICERS LEGALLY SECURED THE RESIDENCE.

The officers were well within their rights to secure the residence upon entry. Detective Williams was charged with serving the arrest warrant for Mr. Brogden.  That arrest warrant charged Mr. Brogden with Attempted First Degree Murder for his role in the "shoot-out" from April 18, 2015.   As such, Detective Williams had already extensively watched the 4613 Marielle Drive address for Mr. Brogden to no avail.  Mr. Brogden had used Lashelle Harry and the 2512 East Federal Street address as a contact previous to Detective Williams observing Brogden exiting the residence and entering a cab.  This information was relayed to the investigating detective, Detective Crane.

All the information Detective Crane and the officers on scene had gathered at the moment the officers knocked and announced their presence at 2512 East Federal Street gave Detective Crane and therefore the officers at 2512 East Federal Street probable cause to seize the residence pending the application for a search and seizure warrant.

Based on the investigation the police knew the following regarding the events of April 18, 2015: Mr. Brogden had been shot; his hands had tested positive for gunshot residue (GSR); no firearm had been recovered despite the Police responding to the shooting scene shortly after the event; the multiple "spent" casings located at the shooting scene came from two distinct firearms; a witness asserted that Brogden had possessed a firearm and fired it at another individual; a second individual was found who had been shot at the same location as Mr. Brogden; Brogden appeared to not be residing at the address he claimed; 2512 East Federal was a mere ten blocks from the shooting scene; 2512 East Federal was an address Brogden claimed for important events but not as his residence; and Brogden's injuries limited his movement since April 18, 2015.  Based on all this information Detective Crane had probable cause to believe there could be evidence of the attempted murder from April 18th. Evidence of the attempted murder would include firearms, ammunition, clothing, forensic evidence, and evidence of motive.  As such, Detective Williams and the patrol officers' seizure of 2512 East Federal was "to prevent the destruction or removal of evidence while a search warrant is being sought is not itself an unreasonable seizure of the dwelling or its contents."  *Segura v. United States*, 468 U.S. 796, 811 (U.S. 1984).

As such the officers may secure a residence to prevent destruction of evidence while in the process of securing a search warrant. *See, e.g., Illinois v. McArthur*, 531 U.S. 326, 329, 337 (2001) (officers were justified in securing a residence to prevent destruction of evidence while waiting to obtain a warrant as they had probable cause to believe drugs were located on the premises); *United States v. Moses*, 540 F.3d, 263, 267, 270-71 (4th Cir. 2008) (police were justified in conducting a three-minute sweep and securing an apartment to prevent destruction of evidence while obtaining a warrant); *United States v. Taylor,* 248 F.3d 506,

7

513-14 (6th Cir. 2001) (officers were justified in searching an apartment to secure the premises, ensure the safety of officers, and preserve evidence while waiting for a search warrant).  Detective Crane, Detective Williams, and the officers had probable cause to believe there was evidence of the attempted murder at 2512 East Federal Street and after their legal entry were allowed to secure the residence pending the application and approval of a search and seizure warrant.

### III.        THE OFFICERS LEGALLY CHECKED THE LIVING ROOM FOR WEAPONS.

2512 East Federal is a ten to fifteen foot wide row home and approximately forty five feet deep.  The first and second floors are fully above ground and the basement area is significantly below ground.  The second floor is split into three separate bedroom spaces with a full bathroom while the first floor is separated into a living area, dining room, and kitchen on the first floor.  As such the living room area is approximately fifteen by twelve feet.

In such a confined space where multiple occupants are gathered and the house is thought to be the residence of an attempted murder suspect, it was reasonable for the officers to conduct a limited search to ensure officer safety.  The Supreme Court in *Riley v. California* held the "ultimate touchstone of the Fourth Amendment is 'reasonableness.'" 134 S.Ct. 2473, 2482 (2014) "To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them "fair leeway for enforcing the law in the community's protection." *Heien v. N. Carolina*, 135 S. Ct. 530, 536 (U.S. 2014) (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

Applying the notion of reasonableness to search and seizures under the Fourth Amendment, the Supreme Court has noted, "[t]he Fourth Amendment prohibits only unreasonable searches. The reasonableness of a search depends on the totality of the

circumstances, including the nature and purpose of the search and the extent to which the search intrudes upon reasonable privacy expectations." *Grady v. N. Carolina*, 135 S. Ct. 1368, 1371, (2015). Taking the totality of the circumstances into account, it was reasonable for the officer in the case at hand to search under the cushion of the sofa to locate any dangerous weapons, in an effort to ensure officer safety. The officers knew that the suspect they just arrested was involved in a deadly shooting, that the suspect just left the residence and possibly lived there, that there may be a weapon within the house and that the five occupants of the house outnumbered the officers. Thus, it was reasonable for the officers to conduct a minimally invasive search to ensure their safety while the individuals were gathered in the living room.

Though the court has not explicitly permitted officers to conduct such safety searches, the rationale flows from a string of cases. In *Terry v. Ohio*, the Court ruled "in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one—whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." 88 S. Ct. 1868, 1879 (1968). Then, in 1983, the Court in *Michigan v. Long*, determined that a protective search of a passenger compartment of a car, which is limited to those areas in which a weapon may be placed or hidden, is lawful during an investigative detention, even without probable cause to arrest, if the officer possesses a reasonable belief based on specific, articulable facts which, "which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." 463 U.S. 1032 (1983). And finally, in *Maryland v. Buie,* the Court focused on searches within a home. 110 S.Ct. 1093 (1989). The Court ruled that officers may conduct a

protective sweep, aimed at protecting officers, if an arrest is made and the circumstances justify the search. The search is limited to a "cursory inspection of those spaces where a person may be found… lasts no longer than is necessary to dispel the reasonable suspicion of danger and … no longer than it takes to complete the arrest and depart the premises."

Citing to this string of cases, the Fourth Circuit has previously determined that, "[a]s a safety measure, officers may conduct a protective search of an area in connection with an arrest to search for weapons within the grab area of an individual when the officers have reasonable belief that the individual is potentially dangerous." *United States v. Brown*, No. 97-4379, 1998 U.S. App. LEXIS 3019, at *4-5 (4th  Cir. Feb. 25, 1998). In *Brown*, the court held the officers' search of a sofa was permissible as a legal protective search, even though the defendant was already apprehended and being observed. *Id.* at *5. The Fourth Circuit has also noted that the issue turns on whether a reasonably prudent man in the officers' circumstances would believe that his safety was in danger and, if so, this belief may constitute exigent circumstances justifying a warrantless search or seizure. *United States v. Hill*, No. 94-5802, 1995 U.S. App. LEXIS 16529, at *5 (4th Cir. July 6, 1995). Further, the Second Circuit in *United States v. Hernandez* held that though "government agents engaged in a protective sweep may not engage in a gull search of the premises … [that] does not mean … that a protective search can involve a search only for individuals and not for weapons within the grab area of an individual whom the government agents have reasonably concluded is dangerous." 941 F.2d 133, 137 (2d Cir. 1991).

In the case at hand, the officers reasonably sought to assure that all occupants and themselves were safe pending the application for a search and seizure warrant.  The officers did not create their own exigency as Mr. Brogden suggests.  It would have been unreasonable

for the officers to insist that all the occupants exit 2512 East Federal and wait outside. Additionally this protective sweep of the couch cushions was reasonable given the officers were outnumbered, were trying to calm the situation, and it all happened within in minutes of the officers legally entry into the residence.

### IV.     THE DEFENDANT DOES NOT HAVE STANDING TO CHALLENGE THE STATEMENTS MADE BY THE OTHER OCCUPANTS.

After the officers had legally found the firearm in their safety check of the couch, the occupants were transported to the Baltimore City Police District.  They were each advised of their Fifth and Sixth Amendment rights as explained in the Supreme Court's holding in *Miranda v. Arizona*, 384 U.S. 436 (1966).  The occupants made statements including the length of time Brogden had lived at the 2512 East Federal residence.  One individual asserted it had been a year and second asserted since at least the April 18th shooting[2].  The statements were legally obtained and given voluntarily and therefore would not be exclude from the search and seizure warrant.

Brogden does not have standing to challenge the statements since the defendant must first "establish a violation of his own fourth amendment rights. *Payner, 447 U.S.* at 731-33; *Rakas*, 439 U.S. at 134; *Alderman*, 394 U.S. at 174.  Here much like the defendant in *United States v. Fuesting*, 845 F.2d 664, 672 (7th Cir. Ill. 1988), Mr. Brogden cannot make a vicarious assertion of the occupants constitutional rights to be free from unreasonable seizure. *See Alderman,* 394 U.S. at 174.   The occupants' seizure was legal and their statements cannot be challenged by the defendant.  Therefore, the statements would not be excised from the search and seizure warrant and Brogden's nexus to the residence is firmly established by the assertion that he had lived there for two months up to a year.

---

[2] A frequent overnight guest asserted that Brogden had lived there since the shooting on April 18th.  The son of the primary occupant and resident of 2512 East Federal stated that Brogden had lived there for a year.

## V.       THE OFFICERS RELIED ON THE WARRANT IN GOOD FAITH.

Even if this court finds that the search warrant was not supported by probable cause, the evidence obtained from the search should not be suppressed because the officers relied on the warrant in good faith. *See generally United States v. Leon*, 468 U.S. 897 (1984). Because the purpose of the exclusionary rule is deterrence, "the application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Leon*, 468 U.S. at 907-08, 922 ("We conclude that the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.").  In its *Leon* decision, the Supreme Court was careful to note that "searches pursuant to a warrant will rarely require any deep inquiry into reasonableness" because a warrant issued by a magistrate normally establishes that law enforcement acted "in good faith in conducting the search." *Leon*, 468 U.S. at 922 (quoting *Gates*, 462 U.S. at 267); *United States v. Ross*, 456 U.S. 798, 823, n. 32 (1982)). Accordingly, under the good faith exception from *Leon*, "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922).

The Supreme Court outlined four scenarios where the officer's reliance on the warrant would not be in good faith: first, where the issuing magistrate "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth"; second, where the magistrate "wholly abandoned his judicial role"; third, where the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and fourth, where a warrant is so facially

12

deficient that no officer can reasonably presume it to be valid. *Leon*, 468 U.S. at 923. Because the defense is misguided in its accusation that the first, third, and fourth scenarios are present here, the good faith exception should apply and the evidence should not be suppressed.

The defense argues that the affiant omitted material facts that rise to the level of inclusion of false information. While true that material omissions and the inclusion of false information are equally misleading, such omissions are simply not present here. *See Miller v. Prince George's County,* 475 F.3d 62, 632 (2007). The fact that the alleged omissions do not exist is primarily evidenced by the defense's inability to point to any specific omission in its motion. Absent the defense's ability to point to any fact that would establish grounds for such an accusation, Detective Crane's sworn affidavit is to be taken as truthful. *See Franks v. Delaware*. 438 U.S. 154, 171 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.")  Because the officers' reliance on the warrant was objectively reasonable, the good faith exception applies and the evidence should not be suppressed. *See United States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 922).

## VI.     THE MOTION FOR A FRANKS HEARING SHOULD BE DENIED.

The defense alleges in its motion that Mr. Brogden is entitled to a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) based on his claim that the affidavit supporting the search warrant contained numerous misrepresentations and omissions. "An accused is generally not entitled to challenge the veracity of a facially valid search warrant affidavit" and *Franks* hearings are designed only to prevent "flagrant" police misconduct. *See United States v. Allen*, 631 F.3d 164, 171 (4th Cir. 2011); *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990). As such, allegations of misconduct must be supported through affidavits and

sworn witness statements, or the defense must provide an explanation of why they cannot be provided. *Franks v. Delaware*, 438 U.S. at 171.

In order to be entitled to a hearing, the defendant must first show that the affiant made a false representation or omitted material information from the warrant affidavit and that the affiant did so "knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155-56. "This showing must more than conclusory and must be accompanied by a detailed offer of proof." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 155-56). This showing must also establish that the affiant included or omitted the information with the specific intent to mislead. *See Colkley*, 899 F.2d at 300-01.

Second, the defendant must show that the false statement or omission was essential to the probable cause determination, meaning that "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171-72). When the defendant alleges that an omission, rather than a false statement, establishes the need for a *Franks* hearing, the defendant's already heavy burden increases. *See United States v. Marion*, 547 Fed. Appx. 283, 287 (citing *United States v. Tate*, 524 F.3d 449, 454 (4th Cir. 2008). Furthermore, the "omitted information that is potentially relevant but not dispositive is not enough to warrant a *Franks* hearing." *Colkley*, 899 F.2d at 301 (citing *United States v. Reivich*, 793 F.2d 957, 962 (8th Cir. 1986)); *see also United States v. Collins*, 2012 WL 6569534, *5 (December 17, 2012) (N.D. W.V.) ("all known exculpatory information need not be included in an affidavit, and omission of information is less likely to require a *Franks* hearing than is the knowing inclusion of false information").

## A.  THE DEFENSE'S ALLEGED OMISSION DOES NOT MEET THE STANDARD FOR A *FRANKS* HEARING.

The defense alleges that the omission of the Brogden's claimed address necessitates a *Franks* hearing, but the defense has failed to sustain its burden of making a substantial preliminary showing on this assertion. *See United States v. Chavez*, 902 F.2d 259, 265 (4th Cir. 1990) (defendant must show that police affirmatively tried to mislead the issuing magistrate; ambiguity or lack of clarity in the affidavit is insufficient); *United States v. Tate*, 524 F.3d 449, 454 ("The defendant must not only point out specifically the portion of the affidavit that is claimed to be false and give reasons why it is false, but he must also furnish '[a]ffidavits or sworn or otherwise reliable statements of witnesses' or explain their absence.'") (citing *Franks*, 438 U.S. at 171). The Government will nevertheless respond to the allegation as laid out in the defense's motion.

The defendant must establish that Detective Crane intentionally omitted the address account in order to mislead the magistrate. *See Colkley*, 899 F.2d at 300-01. At best the exclusion of the address is precisely the type of "innocent mistake" that is an insufficient basis for a *Franks* hearing. *See Franks*, 438 U.S. at 171; *see also Clenney*, 631 F.3d at 665 ("the worst course of action would be to pick apart warrant affidavits from the pristine perch of hindsight or to penalize officers for securing what the law requires").

Further, even if the defense were able to show that the inaccurate account was intentionally designed to mislead, it is not material to the probable cause determination. *See Colkley*, 899 F.2d at 300 (quoting *Franks*, 438 U.S. at 171-72).   The Marielle address is wholly irrelevant for the probable cause determination for this warrant. *See United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984) ("The court's fundamental concern,

15

however, is always the same: did the facts alleged in the warrant furnish probable cause to believe, *at the time the search was actually conducted*, that evidence of criminal activity was located that the premises searched?") (emphasis added).

As the foregoing shows, the defense has not met its "heavy burden" to establish the need for a *Franks* hearing for any of its twelve assertions of material misrepresentation and omission. *Tate*, 524 F.3d at 454 (citing *Franks*, 438 U.S. at 171).  For this reason, the defense motion for a *Franks* hearing should be denied.

## CONCLUSION

For the foregoing reasons, the motions filed by the Defendant should be denied.


Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:   _____/s/_____
Brandis Marsh
Special Assistant United States Attorney
36 South Charles Street
Fourth Floor
Baltimore, Maryland
21201 (410) 209-4897