**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**

NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND  21201-2705
TEL:  (410) 962-3962
FAX:  (410) 962-0872
TOLL FREE: (855) 213-8450

JAMES WYDA
FEDERAL PUBLIC DEFENDER

DEBORAH L. BOARDMAN
ASSISTANT FEDERAL PUBLIC DEFENDER

<u>VIA CM/ECF</u>

April 12, 2016

Honorable Ellen L. Hollander
United States District Court
 for the District of Maryland
101 W. Lombard Street
Chambers 5B
Baltimore, Maryland 21201

    Re:    <u>United States v. Curtis Brogden</u>
            Case No. ELH-15-0554

Dear Judge Hollander,

      I write to supplement my reply brief in response to the government's opposition to Mr. Brogden's Motion to Suppress Evidence.  In preparation for Thursday's hearing, I listened once again to the custodial statements of the four people police found at 2512 E. Federal Street after police entered the home without a warrant.  The statements provide further support for the suppression of evidence.

      First, the recordings confirm that, if the Court finds the initial entry into the home unlawful, the occupants' statements to police should be excluded as fruit of the poisonous tree.  The government has not disputed this fact (other than to challenge Mr. Brogden's standing to challenge the statements).  The recordings establish that immediately after the discovery of the firearm under the couch, all four occupants were handcuffed and taken to the Southeastern District police station for questioning.  The discovery of the firearm under the cushions occurred at approximately 1:40 p.m.  The occupants were interviewed at 2:59 p.m., 3:25 p.m., 3:42 p.m., and 4:09 p.m.  They were administered <u>Miranda</u> warnings.  One of them invoked her right to remain silent.  The other three were reluctant to talk.  They were interrogated about the gun found under the couch cushion.  The police suggested each of them could be charged with the firearm.  All of them denied knowing anything about the gun.

      Second, the recorded statements of two of the occupants, Clay Hart and Jamil Freeman, confirm that police entered the home unlawfully and that police did not act in good faith when they executed the search warrant.  Specifically, Mr. Hart and Mr. Freeman told their respective

The Honorable Ellen L. Hollander
<u>United States v. Curtis Brogden</u>, ELH-15-0554
April 12, 2016
Page 2


interrogators that the police announced that they had a warrant <u>before</u> they entered the house. Mr. Hart's interrogation started at 3:25 p.m. He was interviewed by Detective Vodarick (H-764) and Sergeant Bell. Detective Vodarick asked him, "Can you tell us what happened today?" Mr. Hart responded, in relevant part:

> "I was going to check my mail . . . and a police was entering the house. I was ready to shut the door, but I ain't know they was coming. And he like 'I got a warrant' so I just let 'em come in." Clay Hart statement, 3:32 - 3:46.

Mr. Freeman's interrogation started at 3:42 p.m. He was interviewed by Detective Boyd (F-907) and Detective Valez. His recollection of what happened when police came into the house was nearly identical to Mr. Hart's account. About fifteen minutes into the interrogation, police asked Mr. Freeman where he slept the night before and who was sleeping on the couch. In response, Mr. Freeman stated, in relevant part:

> "I went downstairs and laid down on the couch. When I woke up, wasn't nobody right there. Wasn't nobody right there. I woke up. Went upstairs. Used the bathroom. Came back downstairs. Went back to sleep. Then I just hear them knockin' on the door, talking about they had a search warrant, my little cousin let them in. When they came in, they said they wanted to search around. My little cousin said go ahead, I told 'em go ahead . . . I'm thinking it was a search warrant for me because the whole time I'm thinking I had to go to probation this Thursday . . . I thought I was the only person there on probation . . ." Jamil Freeman statement, 15:18 - 16:27.

The veracity of the young men's statements cannot seriously be questioned. They were made within two hours of the incident. Each young man was questioned separately. Both of them, unprompted, said that the police announced they had a warrant before they entered the home. Mr. Freeman's report is especially credible, because he explains his reaction to hearing the police claim they had a warrant. He thought the warrant was for him because he was the only person on probation and he was concerned that he had missed an appointment with his probation officer. These unprompted statements bear the credibility of an "excited utterance" or "present sense impression." The government's claim that police had consent, which it raised for the first time in its opposition, nine months after the search, is indefensible. More importantly, the unwitting, independent, and credible recollections of the two occupants confirm that police did not act in good faith when they executed the search warrant. Both Detective Vodarick, who took Mr. Hart's statement, and Detective Boyd, who took Mr. Freeman's statement, were two of the four police officers who executed the search warrant later that day.

The Honorable Ellen L. Hollander
<u>United States v. Curtis Brogden</u>, ELH-15-0554
April 12, 2016
Page 3

      I will have a copy of the recorded statements available for the Court at the motions hearing.

      Sincerely,

      /S/

      Deborah L. Boardman
      Assistant Federal Public Defender


cc:    H. Brandis Marsh, AUSA (via CM/ECF)